IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **DONNA LOUISE MARTIN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV24 |
| | ) | |
| **ANDREW SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment on the pleadings.

**I. PROCEDURAL HISTORY**

In October 2016, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging a disability onset date of August 1, 2014. (Tr. 104, 339-352.)[1] The applications were denied initially and upon reconsideration. (Tr. 118-122, 127-144.) After a hearing, the ALJ issued a decision in which she determined that Plaintiff was not disabled from her alleged onset date of August 1, 2014 until the date of her December 3, 2018 decision. (Tr. 14-46, 104-113.) On November 18, 2019, the Appeals

---

[1] Transcript citations refer to the administrative record which was filed with Defendant's Answer. (Docket Entry 8.)

Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of review. (Tr. 1-5.)

**II. STANDARD FOR REVIEW**

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

**III. THE ALJ'S DECISION**

The ALJ followed the well-established five-step sequential analysis to ascertain whether Plaintiff is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ initially determined that Plaintiff met the insured status requirements through September 30, 2019. (Tr. 106.) The ALJ then determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 2014. (*Id.*) The ALJ next found the following severe impairments at step two: fibromyalgia, depression, and anxiety. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listing. (Tr. 107.) The ALJ next

2

set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform light work except that she

> can occasionally climb stairs and ramps, stop, kneel, balance, crouch, and crawl; frequently use the hands bilaterally for handling and fingerings; never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to hazards including dangerous moving machinery, uneven terrain, and unprotected heights; and can perform simple, routine, repetitive tasks, with superficial contact with the public, and no work in teams or tandem.

(Tr. 109.)

At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 112.) Last, at step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform. (Tr. 112-113.) Consequently, the ALJ concluded that Plaintiff was not disabled. (Tr. 113.)

## IV. ISSUES AND ANALYSIS

Plaintiff's sole objection is that the ALJ violated *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) and committed prejudicial error by failing to account for Plaintiff's mental limitations in the RFC. (Docket Entry 13 at 5-6.) More specifically, Plaintiff contends that the RFC limitations to "simple, routine, repetitive tasks, with superficial contact with the public, and no works in teams or tandem" do not properly address Plaintiff's moderate limitations in maintaining concentration, persistence, and pace ("CPP") throughout the workday. (*Id.*) As explained in greater detail below, this is not a persuasive argument.

In *Mascio v. Colvin*, the Fourth Circuit Court of Appeals remanded because the hypothetical the ALJ posed to the vocational expert, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that the ALJ

3

determined at step three that the claimant had moderate[2] difficulties in maintaining CPP. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Beyond this, the Fourth Circuit has recently reiterated that *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). In *Shinaberry*, the plaintiff argued that a limitation only to simple, routine, repetitive tasks did not sufficiently account for her moderate limitations in CPP, in violation of *Mascio*. 952 F.3d at 120-21. After discussing the plaintiff's mental limitations, and explaining the great weight given to the state agency psychological experts' and consultative psychologist's opinions, the ALJ stated that the "simple, routine, repetitive tasks" restriction

---

[2] The Social Security Administration has clarified that a "moderate" rating means that the individual has a "fair" ability to sustain concentration, persistence, or pace "independently, appropriately, effectively" and "on a sustained basis." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(C).

4

"accounted" for Plaintiff's limitations. *Id.* at 121-22. The Fourth Circuit affirmed the ALJ's decision, holding that the ALJ "addressed [Plaintiff's mental limitations and] explained why the psychological evidence and [Plaintiff's] statements support [only] a mental limitation to simple, routine, repetitive tasks." *Id.* at 122.

In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *See Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). More specifically,

> [a]n ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

*Tolbert v. Colvin*, No. 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (citing *Jones v. Colvin*, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

Here, the ALJ determined at step three that Plaintiff had moderate limitations in CPP. (Tr. 108.) Specifically, the ALJ reasoned that

> [t]he record contains subjective reports that the claimant loses focus and has difficulty finishing tasks (Exs. 3F/31; 5F/5, 13F/5; Hearing testimony). However, mental status examination notes generally reflect that her attention and concentration were normal (Exs. 4F/12; 5F/6; 11F/32). She can drive, which takes considerable attention and concentration. Overall, therefore the undersigned finds that the claimant's limitation in this area is no more than moderate.

5

(*Id.*)  After finding that Plaintiff had moderate limitations in CPP, the ALJ determined that Plaintiff "can perform simple, routine, repetitive tasks, with superficial contact with the public, and no work in teams or tandem."  (Tr. 109.)  For the following reasons, the undersigned concludes that the ALJ adequately considered the entire record and explained why additional limitations were not needed to account for Plaintiff's moderate limitations in CPP.

First, throughout her decision, the ALJ accurately noted that Plaintiff's mental status examinations were generally normal. For example, at step three, the ALJ correctly noted that the record contains "subjective reports that the claimant loses focus and has difficulty finishing tasks," but that Plaintiff's "mental status examination notes generally reflect that her attention and concentration were normal."  (Tr. 108, citing Tr. 543, 569, 693.)  In explaining her RFC determination a few pages later in the decision, the ALJ again commented that "the overall medical evidence shows some depression, but mental status examinations were generally normal."  (Tr. 110, referencing Tr. 487, 490, 491, 496, 499, 501, 503, 505, 509-511, 514, 517, 520, 522, 524, 528, 530, 577, 596, 600, 602, 605, 608, 616, 621, 625, 629, 633, 655, 666, 773.)

Second, the ALJ also correctly pointed out that between 2017 and 2018 Plaintiff was getting therapy, had seen a psychiatrist, and found her treatment "tremendously helpful."  (Tr. 111, citing Tr. 615, 788 ("[Plaintiff] reports that the higher dose of Prozac has helped tremendously with her mood and anxiety . . . She says therapy has been tremendously helpful for her and her mood continues to improve steadily."); *see also* Tr. 791-792 ("Client reported that she is adjusting well to her medication; believes that she can think better and has more focus than before."), 804, 839.)

Third, the ALJ's RFC limitations are also supported by the opinions of several mental health professionals. The ALJ considered the opinions of state agency psychiatric consultant, Dr. Bonny Gregory (MD), and state agency psychologist, Dr. Kendra McCarty (Psy.D.), giving both opinions "good weight." (Tr. 111, citing 58-60, 74-76, 93-96.) Dr. Gregory determined that while Plaintiff had limitations in understanding, memory, concentration and persistence, Plaintiff would be capable of understanding and retaining simple instructions and completing simple tasks. (Tr. 58-60, 74-75.) Dr. Gregory further determined that while Plaintiff had social interaction limitations and adaptation limitations, Plaintiff should be capable of handling "routine interactions in a work setting where a great deal of interpersonal interaction is not required." (Tr. 59, 75.) Dr. Gregory opined that Plaintiff would be "capable of tolerating more routine work-place expectations and demands," despite her difficulties with handling stressful situations. (*Id.*) Dr. McCarty concluded that despite her limitations, Plaintiff should be capable of (1) understanding and retaining simple instructions, (2) performing simple tasks, (3) "handl[ing] routine interactions in a work setting with low-level social demands," and (4) could "tolerat[e] more routine work place expectations and demands." (Tr. 94-95.) The ALJ accounted for these opinions by limiting Plaintiff to simple, routine, repetitive tasks, with superficial contact with the public, and no work in teams or tandem. (Tr. 109, 111.)

The ALJ also considered the opinion of psychiatric consultative examiner Dr. Carla Duszlak (MD). (Tr. 111, citing Tr. 565-70.) Dr. Duszlak concluded that Plaintiff would be able to perform simple and repetitive tasks and would be able to interact "at times" appropriately with coworkers and the public. (Tr. 570.) The doctor noted that Plaintiff behaved properly at her appointment but had the potential to become inappropriately

7

aggressive if angry. (*Id.*) Dr. Duszlak also found that Plaintiff had a low stress tolerance and her "[a]ttendance would be possibly affected by her depression in a negative way." (Tr. 570.) The ALJ assigned Dr. Duszlak's opinion partial weight because Plaintiff's mental health treatment was so successful. (Tr. 111.) The ALJ also concluded that Dr. Duszlak's limitation regarding attendance was not supported by the record, which showed, for example, that Plaintiff "was generally able to attend medical and mental health appointments." (*Id.*)

Finally, throughout her decision, the ALJ noted that Plaintiff was able to perform many activities of daily living that required concentration, persistence, and pace. Specifically, the ALJ noted that Plaintiff was able to drive at various points during her alleged period of disability. (Tr. 108, referencing Tr. 565; *see also* Tr. 387, 394.) The ALJ also noted that Plaintiff walked her dog, gardened, cared for animals, maintained an exercise routine consisting of "walking at least 30 minutes per day around her property on hills," chopped and retrieved wood for heating, and went shopping. (Tr. 108, 110, citing Tr. 562, 568, 576; 615; *see also* 386 (perform light housekeeping and light yardwork), 784 ("[Plaintiff] stated that she does do things to help her pain and anxiety including sitting outside in her rocking chair, coloring, playing videogames, petting her cats, and going walking when she is able to do so.") The ALJ also noted that Plaintiff worked at a chicken farm after the alleged onset date, which suggested that she had the capacity to work during the relevant period. (Tr. 106, citing Tr. 20-22.) In light of all this, the undersigned finds that the ALJ adequately explained why she did not include further provisions in the RFC to account for Plaintiff's moderate limitation in CPP, and the record reflects that the ALJ's determination is supported by substantial evidence.

8

Plaintiff's arguments to the contrary are not persuasive.[3] Plaintiff's faults the ALJ for omitting a pace restriction from the RFC. (Docket Entry 13 at 8.) However, neither Dr. Duszlak, nor Dr. Gregory concluded that Plaintiff needed a production pace limitation. And, in fact, Dr. Gregory explicitly stated that "[p]sychiatric issues could impact on persistence and pace at times; however, [claimant] should be able to complete simple tasks within a reasonable time frame." (Tr. 59, 75.) It is true that in a section entitled "MRFC-Additional Explanation," Dr. McCarty stated that "this individual has the ability to perform simple work in a low-stress, low-social, and low-production setting." (Tr. 95.) Nevertheless, to the extent Dr. McCarty endorsed a production pace limitation, the ALJ gave good reasons for omitting it from the RFC. As explained above, neither Drs. Duszlak nor Gregory concluded that Plaintiff was so limited and the ALJ correctly pointed out that she benefited greatly from therapy, she generally had normal mental status reports, and she also performed a wide array of activities of daily living. *See Bacnik v. Colvin*, No. 1:12-CV-801, 2014 WL 3547387, at *4 n.7 (M.D.N.C. July 17, 2014) ("An ALJ is not required to adopt every opinion in a non-examining medical expert's report, even when according the report great weight overall."). The ALJ's decision to omit a production pace limitation from the RFC determination is susceptible to judicial review and supported by substantial evidence.

---

[3] An ALJ is obliged to give good reasons for the weight she attributes to medical opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). These regulations apply for applications, like Plaintiff's, filed before March 27, 2017. *See Dellinger v. Saul*, No. 1:19CV356, 2020 WL 3065313, at *3 n.4 (M.D.N.C. June 9, 2020). As demonstrated throughout this Recommendation, the ALJ provided sound reasons for the weight she attributed to the opinions in the record. To the extent Plaintiff alleges that the ALJ failed to give good reasons for not adopting all of the limitations found by Drs. Duszlak, Gregory, or McCarty, her arguments are not persuasive.

Plaintiff next faults the ALJ for omitting from the RFC a limitation to low stress and stable work environments (*i.e.*, with no changes) and less than occasional decision-making. (Docket Entry 13 at 8, 11.) However, the ALJ's decision to omit these additional limitations from the RFC is also susceptible to judicial review and supported by substantial evidence. As noted, Plaintiff benefited greatly from therapy, she generally had normal mental status reports, and she also performed a wide array of activities of daily living at various times during the period of disability. Moreover, Dr. Gregory concluded that while Plaintiff "would have trouble handling stressful situations . . . she should be capable of tolerating more routine work place expectations and demands."[4] (Tr. 59.) This all supports the ALJ's decision not to add additional limitations to the RFC determination.

Plaintiff further contends that "[t]here is also evidence to support greater limitations with social interaction, especially with supervisors[.]" (Docket Entry 13 at 8-9.) This is essentially a request for the Court to re-weight conflicting evidence, which as the Court noted earlier, it will not do. *Craig*, 76 F.3d at 589. Moreover, in this case, the ALJ limited Plaintiff to superficial contact with the public and no work in teams or tandem. (Tr. 109.) These limitations were supported by substantial evidence, including the opinions of both non-examining state agency consultants, to whom the ALJ attributed "good weight." (Tr. 111.) Dr. Gregory concluded that Plaintiff could "handle routine interactions in a work setting where a

---

[4] Dr. Duszlak opined that Plaintiff "can tolerate little stress" (Tr. 570) and in reliance on this opinion, Dr. McCarty stated that Plaintiff could work in a low stress environment (Tr. 90, 95.) However, as explained above, the ALJ pointed to many good reasons throughout her decision for omitting a low stress limitation from the RFC. Plaintiff's mental health treatment was effective, her mental status reports generally looked good, and her daily activities were robust. And, as further explained, Dr. Gregory did not endorse a low stress limitation.

10

great deal of interpersonal interaction is not required." (Tr. 59.) Dr. McCarty also opined that Plaintiff could "handle routine interactions in a work setting with low-level social demands."[5] (Tr. 95.) All this—as well as Plaintiff's generally normal mental status reports and robust activities of daily living—is substantial evidence supporting the ALJ's social limitations.

And, even assuming the ALJ erred here by failing to include additional social limitations in the RFC (which is not the case for the reasons set forth above), any error would be harmless because the jobs the ALJ concluded that Plaintiff could perform do not require significant social interactions. In fact, the Dictionary of Occupational Titles ("DOT") descriptions of the jobs identified by the VE list interaction with "People" as being "Not Significant."[6] *See, e.g.*, *Kane v. Saul*, No. 3:18CV746 (HEH), 2019 WL 7562760, at *15 (E.D. Va. Aug. 20, 2019) ("Jobs that rank the interaction-with-others function as 'not significant' adequately account for limitations on a claimant's ability to interact with the public, co-workers and supervisors.") (collecting cases).

Last, Plaintiff contends that the ALJ failed to give good reasons for rejecting Dr. Duszlak's conclusion that her "[a]ttendance would be possibly affected by her depression in a negative way." (Docket Entry 13 at 10-11; Tr. 570.) This is not a persuasive argument. First, Dr. Duszlak's conclusion that Plaintiff's "[a]ttendance *would be possibly* affected" is equivocal in

---

[5] Dr. Duszlak opined that Plaintiff could "interact, at times, appropriately with co-workers and the public. She was appropriate today; yet, she has the potential to become inappropriately aggressive if angry." (Tr. 570.) As noted, however, the ALJ provided good reasons—all of which are described above—for partially discounting Dr. Duszlak's opinion.

[6] The ALJ concluded that Plaintiff could work as a sorter (DOT # 649.687-010, 1991 WL 685669), a packer (DOT # 920.685-018, 1991 WL 687927), and a cleaner (DOT # 323.687-014, 1991 WL 672783). (Tr. 113.) However, according to the DOT, these positions do not involve significant contact with other people. (*Id.*)

11

nature. (*Id.* (emphasis added).) It is not clear to the undersigned that it even rises to the level of a medical opinion. Second, the ALJ assigned Dr. Duszlak's opinion partial weight because Plaintiff "was generally able to attend medical and mental health appointments." (Tr. 111.) The ALJ's observation—as demonstrated throughout this Recommendation—that Plaintiff regularly attended her appointments was accurate and was part of an analysis of Plaintiff's robust daily activities. As noted, the activities included, at various points during the alleged period of disability, driving, working at a chicken farm, chopping wood, walking regularly for exercise, gardening, and caring for animals. Third, as explained, the ALJ correctly observed that therapy greatly improved Plaintiff's mental health and that her mental status reports were generally normal. These were all good reasons for the ALJ to discount Dr. Duszlak's conclusion that Plaintiff's "[a]ttendance would be possibly affected by her depression in a negative way." (Tr. 570.) For all these reasons, Plaintiff's objections should all be overruled.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 12) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

February 19, 2021

12

Case 1:20-cv-00024-WO-JLW   Document 16   Filed 02/19/21   Page 12 of 12